

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | | |
|---|---|---|
| JUSTICE 360, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No.: 3:20-03671-MGL |
| | § | |
| BRYAN P. STIRLING, *Director of the South* | § | |
| *Carolina Department of Corrections*; and, | § | |
| ALAN WILSON, *South Carolina Attorney* | § | |
| *General*, | § | |
| Defendants. | § | |

---

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND

---

## I.    INTRODUCTION

Plaintiff Justice 360 (Justice 360) filed this 42 U.S.C. § 1983 and 1988 lawsuit against Bryan P. Stirling (Stirling), in his official capacity as the Director of the South Carolina Department of Corrections (SCDC); and, Alan Wilson, in his official capacity as the South Carolina Attorney General (AG Wilson) (collectively, Defendants).  It asks the Court to invalidate, under the First Amendment, Defendants' interpretation of S.C. Code § 24-3-580 (the Identity Statute) as applied to Justice 360.  According to Justice 360, the Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1331.

Pending before the Court are Stirling's, and AG Wilson's, motions to dismiss Justice 360's amended complaint.  Having carefully considered Stirling's, and AG Wilson's, motions, the responses, the replies, the hearings, the record, and the applicable law, it is the judgment of the

Court Stirling's, and AG Wilson's, motions will be granted and Justice 360's amended complaint will be dismissed without prejudice.

## II.     FACTUAL AND PROCEDURAL HISTORY

### A.     *Factual History*

Justice 360 "is a non-profit organization that provides legal representation to death sentenced inmates and information to the public about the administration of the death penalty in South Carolina[.]"  Am. Compl. ¶ 4.

The Identity Statute provides "[a] person may not knowingly disclose the identity of a current or former member of an execution team or disclose a record that would identify a person as being a current or former member of an execution team."  S.C. Code Ann. § 24-3-580.

AG Wilson, in 2015, issued an opinion (AG Opinion) concluding the phrase "member of an execution team" in the Identity Statute "must be broadly construed[,] and . . . its's protections must be extended to the identities of individuals and companies involved in the process of preparing chemical compounds for use in an execution via lethal injection."  AG Opinion, 2015 WL 4699337 at *5.

Justice 360, on September 1, 2020, "requested information from [Stirling] by letter, asking, among other things, that [he] provide [SCDC's] lethal injection and electrocution protocols, and state how [the SCDC] plan[s] to carry out the executions of [Justice 360's clients] Richard Moore (Moore), Brad Sigmon (Sigmon)[,] and Freddy Owens (Owens)[.]"  *Id.* ¶ 5.

Stirling "responded on September 29, 2020, stating that [SCDC] do[es] not have any drugs to carry out lethal injection at this time, but indicated that even if [it did] procure drugs in the future, [it] do[es] not believe Justice 360 is entitled to know . . . any of the requested information—

including access to execution protocols that had previously [been] provided to counsel for other executions—on the basis of" the Identity Statute. *Id.* Stirling also refused to provide "information about the electrocution process." *Id.* But, Stirling, in a letter to Justice 360, informed it of SCDC's current lethal injection protocol:

> SCDC's current lethal injection protocol is a three-drug protocol, which begins with an injection of Pentobarbital, followed at an appropriate time interval by Pavulon (Pancuronium Bromide), and then followed at an appropriate time interval by Potassium Chloride. . . . [I]f [SCDC] is unable to secure sufficient quantities of each of the three drugs listed above, it is prepared to enact a one-drug protocol, which would consist of the use of Pentobarbital Sodium.

Letter from Daniel C. Plyler to Lindsey S. Vann (Nov. 20, 2020).

As to AG Wilson, Justice 360 alleges, on information and belief, AG Wilson "and his employees have participated in assisting SCDC . . . in attempting to locate drugs for a lethal injection, and have reviewed information in possession of SCDC that Moore seeks access to." *Id.* ¶ 49. And, "[i]n 2015, in response to a request from [Stirling], [AG Wilson] provided a public opinion on the meaning of the [Identity Statute]" and "based on recent filings by [Stirling and the SCDC] in the South Carolina Supreme Court, [the AG Opinion] has formed the main basis for [Stirling's] decision to withhold the information" requested by Justice 360. *Id.*

Justice 360, in its prayer for relief, requests the Court to:

> a.  Declare that [Justice 360] is engaged in professional speech protected by the First Amendment to the United States Constitution to engage in speech with the [C]ourt and clients about the source, composition, and quality of the lethal injection drugs that have been, are, or will be used in executions, as well as the qualifications of the team members selected to perform the execution, as well as the information sought related to the electrocution protocol;
>
> b.  Declare that [Justice 360] has a First Amendment right to political speech with the public about the source, composition,

and quality of the lethal injection drugs that have been, are, or will be used in executions, as well as the qualifications of the team members selected to perform the execution, as well as the information sought related to the electrocution protocol;

c.  Declare that [Justice 360] has an associational right protected by the First and Eighth Amendments to engage and counsel its clients and the [C]ourt in ensuring that society's standards of decency continue to "evolve," protecting its clients' Eighth Amendment rights; and safeguarding the judiciary's ability to complete its proper function of evaluating the constitutionality of lethal injection protocol as well as the electrocution protocol;

d.  Declare that [Justice 360] has the right to know the details of the lethal injection protocol, including the source, composition, and quality of its lethal injection drugs, as well as the qualifications of the team members selected to perform executions;

e.  Declare [Justice 360] has the right to know the details of the execution protocol, including the amperage, voltage, electrodes, the means of ensuring accuracy, whether it has a line-of-sight, whether and what the "back off" plan is, the qualifications of the execution members, how the [SCDC] will ensure the inmate has died, and other details of the protocol pursuant to Justice 360's request;

f.  Declare South Carolina Code § 24-3-580 is unconstitutional as applied to Justice 360 and enjoin enforcement of the Code as applied to Justice 360, or, in the alternative, declare under the canon of constitutional avoidance that [the AG Opinion] and [Stirling]'s interpretation of [it] is improper and should be invalidated;

g.  Order a judicial inspection of the execution facilities;

h.  Order Defendants to pay [Justice 360]'s costs and attorney fees pursuant to 42 U.S.C. § 1988; and

i.  Grant [Justice 360] such other and further relief as the Court deems just and proper.

Am. Compl. at 27–28.

### B.    *Procedural History*

By way of background and as is relevant here, after Justice 360 filed its complaint against

4

Defendants in this Court on October 19, 2020, it filed several lawsuits in South Carolina state courts attempting to obtain the same information it seeks here, i.e., detailed and extensive execution protocol information from Stirling.

On November 12, 2020, Justice 360 filed a Freedom of Information Act (FOIA) lawsuit in the Richland County Court of Common Pleas asking for declaratory and injunctive relief and seeking a declaration from the court SCDC's "records reflecting on the policies, procedures, directives, practices, training, or methodologies of execution" are public records. Compl. ¶ 23, *Justice 360 v. South Carolina Dep't of Corrections, and Bryan P. Stirling, its Director*, Case No. 2020-CP-40-5306 (Richland County Comm. P.) (Justice 360 FOIA Lawsuit).

Four days later, on November 16, 2020, Justice 360, on behalf of Moore, filed a petition for original jurisdiction and declaratory relief at the South Carolina Supreme Court seeking to compel Stirling and SCDC "to produce information regarding how the SCDC plans to carry out Moore's execution, including a copy of the SCDC's execution protocols, to Moore with sufficient notice for him to assess whether to raise a challenge to the execution procedures and/or protocol" under the Eighth Amendment. *Moore v. Stirling* (S.C. Sup. Ct.), Nov. 16, 2020, at 1.

That same day, Justice 360, on behalf of Moore, filed a petition for common law remedial writs of certiorari and mandamus at the South Carolina Supreme Court to compel Stirling and SCDC "to produce copies of the execution protocols and other requested information relevant to how they intend to carry out Moore's execution." *Moore v. Stirling* (S.C. Sup. Ct.), Nov. 16, 2020, at 2. The Supreme Court, on November 20, 2020, denied both of Moore's petitions. Justice 360 then filed an amended complaint in this Court on November 23, 2020, that contained additional allegations against AG Wilson. Justice 360 filed this amended complaint pursuant to Fed. R. Civ. P. 15(a)(1)(B) as a matter of course.

On November 25, 2020, the Richland County Court of Common Pleas, after conducting a hearing the previous day, issued an order denying declaratory judgment in Justice 360's FOIA lawsuit. *See* Nov. 25, 2020, Order, Justice 360 FOIA Lawsuit. The Honorable Alison Renee Lee (Judge Lee), in her order, noted "most of the documents and information requested by [Justice 360] . . . are prohibited from disclosure pursuant to state statutes." *Id.* at 2 (citing the Identity Statute). Justice 360 failed to appeal this order.

Stirling and AG Wilson subsequently filed their motions to dismiss Justice 360's amended complaint. Justice 360 responded to Stirling's, and AG Wilson's, motions to dismiss, Stirling and AG Wilson replied, and the Court held two hearings.

The Court, having been fully briefed on the relevant issues, is prepared to adjudicate the two motions.

## III.    STANDARD OF REVIEW

### A.    *Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)*

"The plaintiff has the burden of proving that subject matter jurisdiction exists." *Evans v. B.F. Perkins Co., a Div. of Standex Intern. Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). "When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), 'the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Id.* (quoting *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 769 (4th Cir. 1991)). "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg, & Potomac*, 945 F.2d at 768.

### B.     Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

A party may move to dismiss a complaint based on its "failure to state a claim upon which relief may be granted." Rule 12(b)(6). "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive the motion, a complaint must have "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In considering a motion to dismiss, a plaintiff's well-pled allegations are taken as true, and the complaint and all reasonable inferences are liberally construed in the plaintiff's favor. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The Court may consider only the facts alleged in the complaint, which may include any documents either attached to or incorporated in the complaint, and matters of which the Court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Although the Court must accept the plaintiff's factual allegations as true, any conclusory allegations are unentitled to an assumption of truth, and even those allegations pled with factual support need be accepted only to the extent "they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. In sum, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption all the allegations in the complaint are true, even if doubtful in fact. *Twombly*, 550 U.S. at 555.

## IV.    DISCUSSION AND ANALYSIS

### A.    *Stirling's Motion To Dismiss*

#### 1.    *Whether the Court has subject matter jurisdiction over this case*

Stirling presents two arguments in support of his contention the Court lacks subject matter jurisdiction.  The Court will address each argument in turn.

##### a.    *Whether Justice 360 has standing to sue Stirling*

Stirling has challenged Justice 360's standing to bring this lawsuit.  Thus, the Court must decide that issue before it can consider the merits of Justice 360's constitutional claims.  *See Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990) ("[B]efore a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue.").

"Article III of the Constitution provides that federal courts may consider only '[c]ases' and'[c]ontroversies.'" U.S. Const. art. III, § 2.  Thus, "a plaintiff seeking relief in federal court must first demonstrate that [it] has standing to do so, including that [it] has a personal stake in the outcome[.]"  *Gill v. Whitford*, 138 S.Ct. 1916, 1923 (2018) (citation omitted) (internal quotation marks omitted).

To establish standing, "[t]he plaintiff must have (1) suffered an injury[-]in[-]fact, (2) that is fairly traceable to the challenged conduct of the defendant[s], and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  An injury-in-fact is "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id*. at 1548.

In questions concerning standing, the Court "view[s] the evidence in the light most favorable to [the plaintiff] and draw[s] all reasonable inferences in [its] favor." *United States v. Phillips*, 883 F.3d 399, 405 (4th Cir. 2018).

Here, Stirling contends Justice 360 lacks Article III standing because it suffered no injury-in-fact. In support of this position, Stirling avers Justice 360 "has not been charged with violating the [Identity Statute]" and "[t]his lack of prosecution makes sense considering . . . the statute regulates information within the government's control." Stirling Mot. to Dismiss at 14. Justice 360, on the other hand, argues where a First Amendment right is alleged, a loss, regardless of the length of time, constitutes an injury-in-fact.

The Supreme Court of the United States has explained that standing requirements are somewhat relaxed in First Amendment cases:

> Even where a First Amendment challenge could be brought by one actually engaged in protected activity, there is a possibility that, rather than risk punishment for his conduct in challenging the statute, he will refrain from engaging further in the protected activity. Society as a whole then would be the loser. Thus, when there is a danger of chilling free speech, the concern that [C]onstitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged.

*Secretary of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 956 (1984).

"The Supreme Court has [also] explained, 'whether the statute in fact constitutes an abridgement of the plaintiff's freedom of speech is, of course, irrelevant to the standing analysis.'" *Cooksey v. Futrell*, 721 F.3d 226, 239 (4th Cir. 2013) (quoting *Meese v. Keene*, 481 U.S. 465, 473 (1987)).

However, "a plaintiff whose claimed legal right is so preposterous as to be legally frivolous may lack standing on the ground that the right is not legally protected." *Initiated and Referendum Inst. v. Walker*, 450 F.3d 1082, 1093 (10th Cir. 2006). "But, where the plaintiff presents a

nonfrivolous legal challenge, alleging an injury to a protected right such as free speech, the federal courts may not dismiss for lack of standing on the theory that the underlying interest is not legally protected." *Id.* Thus, "[f]or purposes of standing, [a court] must assume the [p]laintiffs' claim has legal validity." *Id.*

The Court, for the purposes of a standing analysis in the instant case, assumes Justice 360's First Amendment free speech claim is legally nonfrivolous. Accordingly, the Court concludes Justice 360 has suffered an injury-in-fact, thus satisfying the first prong of the standing analysis.

As to the second and third prong of the standing analysis, neither of those elements are disputed here. Inasmuch as the Court concludes Justice 360 suffered an injury-in-fact, it also concludes the injury is fairly traceable to the challenged conduct of Stirling and is likely to be redressed by a favorable decision from this Court. Consequently, the Court concludes Justice 360 has standing to sue Stirling.

> **b.**    *Whether the* **Rooker-Feldman** *doctrine bars Justice 360's claim against Stirling*

Stirling also argues the Court lacks subject matter jurisdiction under the *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983) (*Rooker-Feldman*) doctrine. Specifically, Stirling insists the "*Rooker-Feldman* doctrine prevents a litigant who loses at the state court from seeking review of state court decisions by a federal court—which is exactly what [Justice 360] seeks here." Stirling Reply at 2.

*Rooker-Feldman* is a narrow doctrine that is "confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Lance v. Dennis*, 546 U.S. 459, 464 (2006) (internal citation omitted).

Justice 360 avers Stirling's "assertion this Court lacks subject matter jurisdiction due to [the] *Rooker-Feldman* abstention [doctrine] . . . demonstrates a fundamental misunderstanding of the doctrine" as it "does not attack any state court judgment, nor allege that any injury to Justice 360's First Amendment right of professional speech was abridged by any decision of the South Carolina Supreme Court or any other state court."  Justice 360 Resp. in Opp'n at 9.

Here, although Justice 360, in this lawsuit, seeks the same type of information sought by Moore at the South Carolina Supreme Court, Justice 360 makes its First Amendment free speech argument for the first time in this Court.  As noted by Justice 360 in its response, "Moore advanced no First Amendment argument at all in his state court pleadings for the obvious reason that he is not an attorney and thus has no First Amendment right of professional speech."  Justice 360 Resp. in Opp'n at 10.

Furthermore, "no state court judgment, much less a state court judgment on the merits of Justice 360's First Amendment claims, is being challenged in this lawsuit."  *Id.* at 10–11. Therefore, because the argument advanced here by Justice 360 was never advanced at any state court level, the Court rejects Stirling's contention the *Rooker-Feldman* doctrine bars the Court from exercising subject matter jurisdiction over this lawsuit.

### 2.     *Whether the Court should abstain from addressing Justice 360's First Amendment challenge against Stirling*

Stirling next argues the Court should abstain from addressing Justice 360's First Amendment constitutional challenge against him under the *Younger* and *Pullman* abstention doctrines.

### a.     *Whether the* **Younger** *abstention doctrine is applicable*

Prior to addressing the parties' arguments, the Court will provide a brief primer on the *Younger* abstention doctrine.  The *Younger* abstention doctrine underscores "a strong federal

policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). This doctrine "recognizes that state courts are fully competent to decide issues of federal law[.]" *Richmond, Fredericksburg & Potomac R.R. Co. v. Frost*, 4 F.3d 244, 251 (4th Cir. 1993) (citation omitted). *Younger* requires federal restraint "when the federal action is duplicative, casts aspersion on state proceedings, disrupts important state enforcement efforts, and is designed to annul a state proceeding." *Moore v. City of Asheville, N.C.*, 396 F.3d 385, 394–95 (4th Cir. 2005).

The Fourth Circuit has "explained that *Younger* applies when the requested relief would interfere with (1) an ongoing state judicial proceeding, instituted prior to any substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides an adequate opportunity for the plaintiff to raise the federal constitutional claim advanced in the federal lawsuit." *United States v. South Carolina*, 720 F.3d 518, 527 (4th Cir. 2013) (internal citations omitted).

Here, Stirling contends the Court should abstain from adjudicating this matter pursuant to the *Younger* abstention doctrine. In Stirling's motion, he avers the *Younger* abstention doctrine is applicable because, among other things, there is a pending state-level proceeding that involves state interests and provides an adequate opportunity for Justice 360 to raise the same First Amendment free speech claim advanced in this lawsuit. In particular, Stirling argues "(1) there is an ongoing state proceeding [in the Richland County Court of Common Pleas before Judge Lee] (2) that implicates important state interests (3) in which there is an adequate opportunity to raise federal claims." Stirling Reply at 4.

But, shortly after Stirling filed his reply, Justice 360's window with which to file a timely appeal to Judge Lee's order denying its motion for a declaratory judgment in the Justice 360 FOIA lawsuit lapsed, thus rendering the relevant state-court proceeding closed. Hence, the absence of a relevant, ongoing state judicial proceeding proves fatal to Stirling's assertion the *Younger* abstention doctrine requires this Court abstain from entertaining Justice 360's lawsuit. Because this fact is dispositive, the Court need not address the parties' other arguments regarding the *Younger* abstention doctrine.

#### b.     *Whether the* **Pullman** *abstention doctrine is applicable*

Stirling also contends the "Court should abstain pursuant to the *Pullman* abstention doctrine and avoid a constitutional challenge to a state statute that has never before been construed by any South Carolina appellate court." Stirling Reply at 7.

Justice 360 maintains, among other things, "this Court should not abstain because Justice 360 has not asked the Court to interpret state law—Defendants themselves have provided their own interpretation." Justice 360 Resp. in Opp'n at 20.

The *Pullman* abstention doctrine "is appropriate where there are unsettled questions of state law that may dispose of the case and avoid the need for deciding the constitutional question." *Meridith v. Talbot County, Md.*, 828 F.2d 228, 231 (4th Cir. 1987).

Here, as an initial matter, Stirling's request this Court abstain under the *Pullman* abstention doctrine is undercut by its steady reliance on the Identity Statute. Stirling, throughout this litigation, has argued the Identity Statute is clear and unambiguous. And, the Honorable Alison Renee Lee, in her order denying declaratory judgment in Justice 360's FOIA lawsuit, noted the validity of the Identity Statute. *See* Nov. 25, 2020, Order, Justice 360 FOIA Lawsuit (citing S.C.

Code Ann. § 24-3-580)  ("[M]ost of the documents and information requested by [Justice 360] . . . are prohibited from disclosure pursuant to state statutes.").

Consequently, the Court concludes the *Pullman* abstention doctrine is inapplicable here.

> **3.    Whether Justice 360 fails to state a claim upon which relief may be granted**

Of the multiple arguments Stirling presents in support of his motion to dismiss Justice 360's complaint, one is dispositive.  Accordingly, the Court will now address this argument.

As a reminder, the Identity Statute provides "[a] person may not knowingly disclose the identity of a current or former member of an execution team or disclose a record that would identify a person as being a current or former member of an execution team."  S.C. Code Ann. § 24-3-580.

Stirling, in his motion, contends his withholding of lethal injection and electrician protocols, through his interpretation of the Identity Statute, fails "to prohibit [Justice 360] from doing anything, [and as a result,] there is no potential First Amendment [free speech] violation." Stirling Reply at 10 (emphasis modified).

Justice 360, on the other hand, argues Stirling, in interpreting the Identity Statute and withhold the information it seeks, "impermissibly interfer[es] in an existing professional relationship between government-appointed attorneys and their clients[,] and [Stirling censures] not only Justice 360's ability to speak on matters of deep constitutional import, but [it] also engag[es] in content and viewpoint discrimination by suppressing certain types of speech [Stirling disfavor[s]."  Justice 360 Resp. in Opp'n at 3.

Although Justice 360 contends it does not "seek this information pursuant [to] the First Amendment 'right of access' to . . . records, unlike the plaintiff-inmates in other [First Amendment right of access cases]" *id.* at 2, a review of its response and arguments included therein support such a conclusion.  Justice 360's First Amendment free speech argument is nothing more than a

First Amendment right-of-access argument called by another name. Justice 360's own description of the underlying legal issue in this case supports this conclusion.

For example, the first several pages of Justice 360's response repeatedly reference some form of right-of-access. *See id.* at 2–4, 6 ("Justice 360 seeks access to information . . . ."; Stirling is "cutting off access to previously available information . . . ."; the Identity Statute "cuts off access to information . . . ."; Stirling's "interpretation of the statute, which has the practical effect of denying access to information . . . ."; Stirling "has also imposed content-based conditions on access to the information . . . .")

Justice 360's failure to call its First Amendment right-of-access argument by its proper name, and instead classify it as a First Amendment free speech argument, is obvious: Courts have repeatedly rejected First Amendment right-of-access arguments under facts similar to the instant case. *See, e.g. Wellons v. Comm'r, Ga. Dept. of Corr.*, 754 F.3d 1260, 1267 (11th Cir. 2014) (citations omitted) ("Neither the First, Fourteenth, or First Amendments afford [inmate] the broad right to know where, how, and by whom the lethal injection drugs will be manufactured, as well as the qualifications of the person or persons who will manufacture drugs, and who will place catheters."); *Owens v. Hill*, 758 S.E.2d 794, 805 (Ga. 2014) ("To the extent that Hill seeks to turn the First Amendment into an Open Records Act for information relating to executions, his claim clearly fails.").

As noted by Stirling, the primary cases cited and analyzed by Justice 360, in support of its contention Stirling's interpretation of the Identity Statute acts as a violation of its First Amendment free speech rights, prove fatal to its claim. In fact, the primary cases cited and discussed by Justice 360 involve direct attempts by the government "to prohibit certain speech, which is fundamentally different from" Justice 360's claims in this lawsuit. Stirling Reply at 10.

For example, Justice 360 cites *NAACP v. Button*, 371 U.S. 415 (1963), for the proposition Stirling's interpretation of the Identity Statute has the practical effect of suppressing speech so as to warrant a finding of a First Amendment free speech violation.  In *Button*, the Supreme Court found unconstitutional, under the First Amendment as a violation of free speech, a Jim Crow era state statute that made the act of informing another person his legal rights have been violated, and referring him to a particular attorney or group of attorneys, such as the NCAAP, a crime.  The Court in *Button* concluded "broadly curtailing group activity leading to litigation may easily become a weapon of oppression, however evenhanded its terms appear[,]" and "[i]ts mere existence could well freeze out of existence all such activity on behalf of the civil rights of Negro citizens."  *Id.* at 436.

The dissimilarity between the facts in *Button* and this case is great.  Justice 360, unlike the NCAAP in *Button*, is free to make any argument to the Court on behalf of its clients.  And, Justice 360 may represent any client it so chooses, without restriction.  Stirling, in his interpretation of the Identity Statute, fails to seek to suppress a sect of the population and deny them access to the courts.

Justice 360 also cites *Fusaro v. Cogan*, 930 F.3d 241 (4th Cir. 2019), for the suggestion Stirling's application of the Identity Statute serves as a content-based restriction on its political expression.  In *Fusaro*, a Maryland statute limited access to Maryland's list of registered voters (the List) to actual registered voters of the state, and prohibited using the List for purposes unrelated to the electoral process.  *Id.*  The plaintiff in that case, Dennis Fusaro (Fusaro), challenged this law and alleged it "violate[d] the Free Speech Clause of the First Amendment. . . ." *Id.* at 244–45.  When determining whether "Fusaro's alleged injury is protected by the Free Speech Clause of the First Amendment," the Fourth Circuit concluded "three important considerations

compel [its] conclusion that [the statute at issue] implicates interests that are protected by the First Amendment." *Id.* at 248, 250.

The Court believes a discussion of the first two considerations is instructive to the case at bar.  As to the first consideration, the Fourth Circuit determined the "List is closely tied to political speech, which generally receives the strongest First Amendment protection." *Id.* at 250.  In coming to this conclusion, the court noted the "circulation of political ideas typically receives the broadest protection afforded by the First Amendment." *Id.* at 251 (internal citation omitted).  Also, the court further opined the fact the state of Maryland "makes the List publicly available . . . recognizes the common use of such voter data by political groups, advocacy organizations, and others seeking to spread messages or garner support for candidates or causes." *Id.* (footnote omitted).

Turning to the second consideration, the Fourth Circuit in *Fusaro* recognized the statute at issue incorporated "both content- and speaker-based restrictions." *Id.* at 253.  Thus, the "practical operation of [the statute was] to limit use of the List to political speech, and then restrict the pool of speakers with access to an effective means of communicating that speech." *Id.*

Accordingly, because "of the close connections between the List and political speech, and the combined effect of the content- and speaker-based restrictions governing access to the List under [the statute at issue]," the Fourth Circuit determined Fusaro stated a claim sufficient to defeat a motion to dismiss.

Here, Justice 360 posits it is similar to the plaintiff in *Fusaro* because Justice 360 "is an organization of public interest attorneys who engage in mission-driven litigation as a 'form of political expression.'"  Justice 360 Resp. in Opp'n at 5–6 (quoting *In re Primus*, 436 U.S. 412, 428 (1978)).

The Court concludes this argument unpersuasive.  First and foremost, the information at issue in this case is apolitical.  The information sought by Justice 360 will not be used in the electoral process.  The *Fusaro* court's decision primarily rested on the political nature of voting information, an aspect lacking in the instant case.  Second, Stirling is not engaging in content- and speaker-based restrictions of the information in his possession.  He has decided to withhold certain information within his control.

Third, Justice 360's contention is directly undercut by the *Fusaro* court's noting "Maryland could have decided not to release its voter registration list 'without violating the First Amendment.'"  *Id.* at 255 (quoting *LAPD v. United Reporting Pub. Corp.*, 528 U.S. 32, 40 (1999)).  If Maryland could have decided to withhold releasing its voter registration list without violating the First Amendment, then Stirling should be able to decide to withhold releasing the sought after apolitical information in this case without violating Justice 360's First Amendment right to free speech.

Also, Justice 360 argues *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533 (2001), supports its position Stirling, through his interpretation of the Identity Statute, intrudes on a government-created attorney-client relationship and violates its First Amendment right to speak for its clients.  In 1974, Congress enacted the Legal Services Corporation Act (Act) that established the Legal Services Corporation (LSC), a nonprofit corporation whose mission is to donate funds to support noncriminal legal representation of indigent persons.  *Id.* at 536.  One of the restrictions Congress imposed in this Act prohibited "legal representation funded by recipients of LSC moneys if the representation involves an effort to amend or otherwise challenge existing welfare law."  *Id.* at 536–37.

Various LSC interested parties sought to declare this restriction invalid as an "impermissible viewpoint-based discrimination in violation of the First Amendment[,]" especially in light of the limited forum of speech created by Congress through the creation of the Act. *Id.* at 537. The Supreme Court found this provision unconstitutional, concluding "[t]he Constitution does not permit the Government to confine litigants and their attorneys in this manner." *Id.* at 548.

Justice 360 argues it is similar to the LSC because it is government funded with a mission to represent indigent clients, and Stirling, through his interpretation of the Identity Statute, is interfering with its government funded mandate to speak for its clients. *See generally* Am. Compl. ¶ 45 ("Justice 360 was established in 1988 as one of a number of Death Penalty Resource Centers initially funded by the Administrative Office of the United States Courts.").

Here, the Court concludes Justice 360's argument it is similar to the LSC unavailing. As in the previous two cases discussed above, the difference between the facts of the case cited by Justice 360 and the facts of this case are readily distinguishable.

First, whereas the Act at issue in *Velazquez* created the LSC, the Identity Statute in this case failed to create Justice 360. Second, Stirling, through his interpretation of the Identity Statute, fails to regulate any speech of Justice 360 nor impose upon it any restrictions in the types of clients or cases it may undertake as was the case in *Valazquez*. Lastly, no suggestion exists "the South Carolina General Assembly has created a forum for [Justice 360]'s speech[,]" Stirling Reply at 10 (internal quotation omitted), as was concluded by the Supreme Court in *Valazquez*. Justice 360's citation to, and analysis of, *Valazquez*, is another faulty comparison to the facts underlying this case.

Justice 360, in its response, correctly notes "the theory of professional speech Justice 360 articulates has not been argued in any death penalty case[.]" Justice 360 Resp. in Opp'n at 2. The

reason for the absence of such an argument in death penalty cases, the Court thinks, is evident: there "is no colorable argument that the [Identity Statute] infringes [Justice 360's First Amendment freedom of speech rights] because it does not prohibit . . . [Justice 360's] actions." Stirling Reply at 10. Accepting Justice 360's First Amendment free speech argument here would allow any attorney to gain access to any government record under the guise of advising and educating one's client. Such a result is infeasible and impractical.

Consequently, the Court concludes Justice 360 fails to state a claim upon which relief may be granted against Stirling, and the amended complaint against Stirling will be dismissed without prejudice.

### B.    *AG Wilson's Motion To Dismiss*

#### 1.    *Whether the Court has subject matter jurisdiction over this case*

##### a.    *Whether Justice 360 has standing to sue AG Wilson*

AG Wilson has challenged Justice 360's standing to bring this lawsuit. Thus, the Court must decide that issue before it can consider the merits of Justice 360's constitutional claims. *See Whitmore*, 495 U.S. at 154 ("[B]efore a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue.").

As noted in the Article III standing analysis above, to establish standing, "[t]he plaintiff must have (1) suffered an injury[-]in[-]fact, (2) that is fairly traceable to the challenged conduct of the defendant[s], and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547. An injury-in-fact is "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id*. at 1548.

Here, as to the injury-in-fact prong, AG Wilson contends Justice 360 "has alleged no direct injury as to [it] when [AG Wilson's] Opinion [construing the Identity Statute to cover providers

of drugs used in the lethal injection process] is non-binding and he has no authority to conduct executions." AG Wilson's Mot. to Dismiss at 5.

Justice 360, on the other hand, argues "the facts as pled in the amended complaint establish an injury[-]in[-]fact as Justice 360 must only show that its mission has been frustrated by actions of [AG Wilson], and that as a result it has been forced to divert organizational resources to counteract [AG Wilson's] actions." Justice 360 Resp. in Opp'n at 5.

As the Court noted above, the Supreme Court of the United States has explained that standing requirements are somewhat relaxed in First Amendment cases:

> Even where a First Amendment challenge could be brought by one actually engaged in protected activity, there is a possibility that, rather than risk punishment for his conduct in challenging the statute, he will refrain from engaging further in the protected activity. Society as a whole then would be the loser. Thus, when there is a danger of chilling free speech, the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged.

*Joseph H. Munson Co., Inc.*, 467 U.S. at 956.

"The Supreme Court has [also] explained, 'whether the statute in fact constitutes an abridgement of the plaintiff's freedom of speech is, of course, irrelevant to the standing analysis.'" *Cooksey*, 721 F.3d at 239 (quoting *Meese*, 481 U.S. at 473).

However, "a plaintiff whose claimed legal right is so preposterous as to be legally frivolous may lack standing on the ground that the right is not legally protected." *Initiated and Referendum Inst.*, 450 F.3d at 1093. "But, where the plaintiff presents a nonfrivolous legal challenge, alleging an injury to a protected right such as free speech, the federal courts may not dismiss for lack of standing on the theory that the underlying interest is not legally protected." *Id.* Thus, "[f]or purposes of standing, [a court] must assume the [p]laintiffs' claim has legal validity." *Id.*

The Court, for the purposes of a standing analysis in the instant case, assumes Justice 360's First Amendment free speech claim is legally non frivolous. Accordingly, the Court concludes Justice 360 has suffered an injury-in-fact, thus satisfying the first prong of the standing analysis.

Regarding the second and third prong of the standing analysis, the Court concludes they are met, as Justice 360's injury-in-fact is fairly traceable to the challenged conduct of AG Wilson via its publication of the AG Opinion, and would redressed by a favorable judicial decision of this Court.

Accordingly, the Court concludes Justice 360 has standing to sue AG Wilson.

### 2. *Whether Justice 360 fails to state a claim against AG Wilson upon which relief may be granted*

AG Wilson presents two arguments in support of his contention Justice 360 fails to state a claim against him under Rule 12(b)(6). First, AG Wilson avers Justice 360's allegation he is assisting Stirling in facilitating executions, when this undertaking is statutorily prescribed to Stirling, *see* S.C. Code Ann. § 24-3-530(A) ("A person convicted of a capital crime and having imposed upon him the sentence of death shall suffer the penalty by electrocution or, at the election of the person, lethal injection under the direction of the Director of the Department of Corrections"), is conclusory and fails to state a claim upon which relief may be granted under the *Iqbal* motion to dismiss standard.

Justice 360, on the other hand, argues AG Wilson and Stirling are acting in privity and "because the most plausible conclusion based on the available information is that the [Stirling and AG Wilson] are acting in concert [to facilitate executions], the *Iqbal* standard favor's Justice 360's case." Justice 360 Resp. in Opp'n at 6.

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "A pleading that offers 'labels and

conclusions' . . . will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*

Here, Justice 360's allegations against AG Wilson may be classified as mere naked assertions. *See* Am. Compl. ¶ 49 ("On information and belief, [AG Wilson] and his employees have participated in assisting [Stirling] in attempting to locate drugs for a lethal injection, and have reviewed the information in possession of Stirling."). As noted by AG Wilson, executions are statutorily carried out by Stirling, *see* S.C. Code Ann. § 24-3-530(A) ("A person convicted of a capital crime and having imposed upon him the sentence of death shall suffer the penalty by electrocution or, at the election of the person, lethal injection under the direction of the Director of the Department of Corrections").

In fact, Justice 360, in its response in opposition to AG Wilson's motion to dismiss, specifically admits it has no facts supporting its naked assertions and asks the Court to allow it to partake in discovery so it may ascertain them. *See* Justice 360's Resp. in Opp'n at 3 n.1 (noting AG Wilson "should not be dismissed from the case before [Justice 360] has the opportunity to obtain evidence, now in the possession of [Stirling and AG Wilson]." Accordingly, the Court agrees with AG Wilson as to his first argument and concludes Justice 360 fails to state a claim under Rule 12(b)(6) as to him.

Turning to AG Wilson's second argument in support of his motion to dismiss, he avers Justice 360's allegation his non-binding AG Opinion is being used to deny it access to information it seeks fails to state a claim upon which relief may be granted under the *Iqbal* motion to dismiss standard. Justice 360, in response, makes the same privity argument as noted above.

In South Carolina, "Attorney General Opinions, while persuasive, are not binding upon" the Court. *Charleston Cnty. Sch. Dist. v. Harrell*, 713 S.E.2d 604, 609 (S.C. 2011). Thus, inasmuch as the AG Opinion is non-binding, Stirling is not required to follow the AG Opinion. Consequently, because the AG Opinion is non-binding, the Court concludes Justice 360 fails to state a claim upon which relief may be granted against AG Wilson.

Accordingly, the Court concludes Justice 360 fails to state a claim upon which relief may be granted against AG Wilson, and the amended complaint against him will be dismissed without prejudice.

### C.    *Whether the Court should grant Justice 360's motion for leave to amend the amended complaint*

After South Carolina Governor Henry McMaster signed a bill into law authorizing the firing squad as a method of execution that a death-sentenced inmate may elect, Justice 360 filed a motion, pursuant to Rule 15(a)(2), to amend its amended complaint. Justice 360 avers it "seeks to amend its complaint to (1) add additional factual allegations about the risks associated with execution by firing squad and the resulting need for Justice 360 attorneys to review the firing squad protocol [the SCDC] intends to implement"; and "(2) seek[s] additional relief in the form of information about South Carolina's firing squad protocol." Justice 360 Mot. to Amend at 2. Stirling and AG Wilson, in response, argue the "Court should deny [Justice 360's] motion to amend its complaint for a second time because the proposed amendment is futile." Stirling and AG Wilson Resp. in Opp'n at 1.

Rule 15(a)(2) provides the "[C]ourt should freely give leave when justice so requires. "A motion to amend should only be denied when 'the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" *ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia*, 917 F.3d 206, 217–18 (4th Cir. 2019)

(quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999)). "Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards[.]" *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011).

Here, inasmuch no party contends an amendment would be prejudicial or in bad faith, the issue before the Court is whether the amendment would be futile. The addition of a firing squad as a possible method of execution fails to alter the Court's detailed analysis in this Order. Justice 360 has no First Amendment free speech right to this information. Thus, its proposed amendment would be futile, and the Court will deny Justice 360's motion for leave to amend.

## V.     CONCLUSION

In light of the foregoing discussion and analysis, Stirling's, and AG Wilson's, motions to dismiss the amended complaint for failure to state a claim pursuant to Rule 12(b)(6) are **GRANTED**, and the amended complaint is **DISMISSED WITHOUT PREJUDICE**. Furthermore, Justice 360's motion for leave to amend the amended complaint is **DENIED**. All other motions are **DEEMED AS MOOT**.

     **IT IS SO ORDERED.**

Signed this 29th day of September 2021, in Columbia, South Carolina.

                        s/ Mary Geiger Lewis
                        MARY GEIGER LEWIS
                        UNITED STATES DISTRICT JUDGE